JUNE RODD T/A THE STUDIO OF HAVELOCK v. W. H. KING DRUG COMPANY

No. 763SC237

(Filed 1 September 1976)

1. **Damages § 12— general and special damages — pleadings**
     General damages, which are the natural and necessary result of a wrong, are implied by law and may be recovered under a general allegation of damages; special damages, those which do not necessarily result from the wrong, must be pleaded, and the facts giving rise to the special damages must be alleged so as fairly to inform the defendant of the scope of plaintiff's demand. G.S. 1A-1, Rule 9(g).

2. **Damages § 12; Uniform Commercial Code § 21— operating losses — pleadings — breach of warranty of merchantability**
     Operating losses are special damages which must be alleged under G.S. 1A-1, Rule 9(g) and are consequential damages which are recoverable under G.S. 25-2-715(2) if the seller knew or reasonably

could have foreseen that the probable result of a malfunctioning product would be such operating losses; the pleadings and evidence in this case did not permit recovery of operating losses by plaintiff for breach of warranty of merchantability of a photographic color enlarger.

3. **Damages § 16; Uniform Commercial Code § 21— breach of warranty — damages — inadequate instructions**

The trial court's instructions did not adequately declare and apply the law as to damages recoverable for breach of warranty of merchantability of a photographic color enlarger.

ON *writ of certiorari* to review proceedings before *Browning, Judge.* Judgment entered 30 May 1975, Superior Court, CRAVEN County. Heard in the Court of Appeals 14 June 1976.

In this action to recover damages in the sum of $30,000.00 for breach of implied warranty of merchantability in the sale of a color processing unit by defendant to plaintiff for use in her photography studio, defendant denied the breach and counterclaimed to recover $870.97 for goods sold.

At trial evidence for the plaintiff tended to show that the purchase price of the color processing unit, which included an enlarger, was $6,006.24; the unit was delivered 15 March 1969; the enlarger malfunctioned from the beginning and continuously thereafter until it was corrected by the manufacturer, who found defective wiring, and returned to plaintiff on 29 September 1969. The unit then functioned properly. During this period plaintiff was unable to duplicate and process color photographs. Plaintiff's net income was $697.75 in 1965, $213.79 in 1966, $1,285.44 in 1967. She had a net loss of $285.59 in 1968, $4,619.91 in 1969, and $6,625.86 in 1970. She closed the studio in December 1970, at which time she was indebted for rent, insurance and photography equipment and supplies in the total sum of $2,111.65. Plaintiff testified that her losses began with the malfunctioning of the color enlarger, but she waited until December 1970 to close her studio because she "thought King Photo Supply was going to help me with the cost of some of the losses incurred because of the malfunction."

Defendant's evidence tended to show that it had received numerous telephone calls from plaintiff relative to malfunctioning of the enlarger, and that defendant responded to these calls and attempted to correct the defects but was unable to do so. The unpaid balance of her account was $870.97.

The jury found a breach of warranty, and rendered verdict for plaintiff in the sum of $30,000.00, and for defendant on its counterclaim for $870.97. The trial court denied defendant's motion to set aside the verdict. From judgment on the verdict defendant appealed.

*Ward, Tucker, Ward & Smith, P.A. by David L. Ward, Jr., and Thomas R. Crawford for plaintiff appellee.*

*Jacob W. Todd for defendant appellant.*

CLARK, Judge.

Since all of the evidence supports the finding by the jury that there was a breach of warranty in that there was a defect in the color enlarger purchased by plaintiff from defendant for use in her commercial photography business, we find that the primary question before this Court relates to damages. The defendant assigns error in the charge of the court on the damage issue and the denial of the defendant's motion to set aside the verdict.

In her complaint plaintiff alleged damages as follows:

"(15) That, because of defendant's breaches of warranty and failure to take such steps as necessary to correct the defects in the manufacture of the enlarger, plaintiff suffered extensive and severe damages, in the amount of THIRTY THOUSAND and No/100 ($30,000.00) DOLLARS, which such damages include but are not limited to:

(a) the purchase price of the enlarger;

(b) lost profits and potential earnings;

(c) costs of replacing numerous items of equipment burned out or destroyed by the defective operation of the enlarger;

(d) travel, telephone and other communication and transportation costs incurred by plaintiff and her agents and employees in their efforts to fix the defective enlarger and encourage defendant to do likewise;

(e) other incidental and consequential damages to which the plaintiff may be entitled under the provisions of North Carolina General Statutes Sec. 25-2-715."

Rodd v. Drug Co.

Before filing an answer defendant filed a motion for a more definite statement by the plaintiff of damages. The motion was denied. Defendant then filed a motion for partial summary judgment by "dismissing this action as to items (b) and (e) in paragraph 15 of the complaint," supporting its motion by the complaint and the deposition (not a part of the record on appeal) of the plaintiff. This motion was allowed and the court ordered that "plaintiff have and recover nothing of the defendant on account of lost profits, potential earnings or consequential damages." Plaintiff excepted.

The plaintiff contends that her evidence established that as a result of the malfunction of the color enlarger for the period between the date of original delivery on 15 March 1969, and the date of return delivery after repair on 29 September 1969, she suffered such operating losses that she had to close her commercial photography business in December 1970; that she was entitled to recover for the operating losses during 1969 and 1970, for the debts which she owed when she closed her studio in December 1970, for the cost of the color processing unit in the sum of $6,006.24, and for the reasonable value of her services during 1969 and 1970 in the sum of $10,400.00, all amounting to the total sum of $30,627.44, and that these various elements of damage support the jury award of damages in the sum of $30,000.00.

In accordance with prior North Carolina law, under the Uniform Commercial Code (G.S. 25-2-314), there is an implied warranty that the goods sold are merchantable, unless there is an exclusion or modification of warranty as provided by G.S. 25-2-316. The requirements of "merchantability" are spelled out in detail in Subsection (2) of G.S. 25-2-314, which includes the prior case law definition that the personal property must be reasonably fit for the purposes for which sold. See *Swift & Co. v. Aydlett,* 192 N.C. 330, 135 S.E. 141 (1926) ; *Aldridge Motors, Inc. v. Alexander,* 217 N.C. 750, 9 S.E. 2d 469 (1940) for prior law. And see *Performance Motors, Inc. v. Allen,* 280 N.C. 385, 186 S.E. 2d 161 (1972).

Where there is a breach of the implied warranty of merchantability the Uniform Commercial Code provides for recovery by the buyer of both "general" damages, which are implied by law, and "special" damages, which arise from the special circumstances of the case and must be properly pleaded.

General damages for seller's breach with regard to accepted goods are provided for by G.S. 25-2-714(2) as follows:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Special damages are provided for by G.S. 25-2-715 as follows:

*"Buyer's incidental and consequential damages.—*(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty."

[1] The distinction between general and special damages is principally important with regard to the pleadings and quantum of proof. General damages are the natural and necessary result of the wrong, are implied by law, and may be recovered under a general allegation of damages. But special damages, those which do not necessarily result from the wrong, must be pleaded, and the facts giving rise to the special damages must be alleged so as to fairly inform the defendant of the scope of plaintiff's demand. G.S. 1A-1, Rule 9(g) provides that "When items of special damage are claimed each shall be averred." This rule codifies established North Carolina law. See Shuford, N. C. Civil Practice and Procedures, Sec. 9-10.

---
**Rodd v. Drug Co.**

---

Under the pleadings and the evidence in this case, the plaintiff may recover general damages as provided by G.S. 25-2-714(2) for breach of warranty (i.e., the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted), and incidental damages as provided by G.S. 25-2-715(1) for expenses reasonably incurred in connection with handling the defective color enlarger. Considering the evidence in the light most favorable to plaintiff, general damages would not exceed the cost of the color processing unit in the sum of $6,006.24. Although plaintiff offered evidence that expenses were incurred in the handling of the defective color enlarger, such as telephone calls to defendant in her efforts to have the malfunction corrected, she failed to offer evidence of the amount of these expenses.

[2] Operating losses are special damages which must be alleged under G.S. 1A-1, Rule 9(g) and are consequential damages which are recoverable under G.S. 25-2-715(2) if defendant knew or reasonably could have foreseen that the probable result of a malfunctioning color enlarger would be such operating losses. See *Gurney Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 467 F. 2d 588 (4th Cir. 1972).

In the case before us, it does not appear whether the basis for the ruling by the trial court in its "partial summary judgment" that plaintiff could not recover "lost profits, potential earnings or consequential damages" was plaintiff's failure to allege special damages as required by G.S. 1A-1, Rule 9(g), or her failure to offer proof in her deposition that the claimed damages proximately resulted from the defective enlarger as required by G.S. 25-2-715(2)(a). In any event, plaintiff did not move before trial to amend her complaint to allege special or consequential damages, and did not move at trial to amend to conform to the evidence under G.S. 1A-1, Rule 15. Clearly, the pleading and the evidence limited plaintiff to the recovery of general damages for breach of warranty under G.S. 25-2-714(2) and do not support the jury award of $30,000.00 in damages to the plaintiff.

[3] On the damage issue the trial court instructed the jury in pertinent part as follows:

"Now it is a general rule of law that the only damages which may be recovered are those damages which are the

proximate result of the breach. In considering those damages you may consider the following types of damages: The out of pocket expenses, repairs, the cost of the equipment purchased, and incidental expenses. In considering these damages you may not consider loss of profits, potential earnings, and consequential damages. . . . "

These instructions do not adequately declare and explain and apply the law to the damage features of the case as required by G.S. 1A-1, Rule 51(a).

We find no error in the trial other than on the damage issue, and on this issue only there must be a new trial.

The case is remanded for a new trial on the issue of what damages the plaintiff is entitled to recover from the defendant.

Remanded.

Judges MORRIS and VAUGHN concur.