PIEDMONT PLASTICS, INC., PLAINTIFF v. MIZE COMPANY, INCORPORATED, DEFENDANT AND THIRD-PARTY PLAINTIFF v. SOUTHERN AGRICULTURAL CHEMICALS, INC., AND H-M-T MANUFACTURING, INC., DEFENDANTS

No. 8126SC1142

(Filed 6 July 1982)

1. Evidence § 29.2— tally sheets showing records of service calls—not within business records exception

   The trial court did not err in finding that a tally sheet showing records of service calls did not fall within the business records exception to the hearsay rule since the tally sheet was formed from information received from work orders and the work orders were not offered into evidence.

**2. Evidence § 29.2— business records—tally sheet not analogous to ledger sheet**

Admission of a tally sheet which showed records of service calls was not required by the cases regarding admission of ledger sheets since there was no evidence regarding the business function of a tally sheet, or its method of compilation, which would suggest the likelihood of accuracy and since the conditions of the business records exception were not established to the court's satisfaction.

**3. Trial § 32.2— instruction concerning damages—use of "several" proper**

The trial court did not err in instructing the jury on damages that "*several* of the . . . machines were worked on and replaced with other rollers" where the only competent evidence before the court showed 15 defective rollers had been repaired by a service and repair supervisor.

**4. Damages § 6; Sales § 19— breach of warranty—failure to instruct on incidental and consequential damages proper**

In an action concerning a breach of warranty, the trial court properly failed to instruct on incidental and consequential damages where the record contained no competent evidence which sustained the allegations asserted in the third-party defendant's counterclaim.

APPEAL by third party defendants from *Allen, Judge.* Judgment entered 18 June 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 9 June 1982.

Original plaintiff sued original defendant for payment allegedly due for certain plastic rollers furnished on an open account. Original defendant answered and filed a third party complaint against third party defendants, to which it had sold the rollers it had purchased from original plaintiff.

Third party defendants answered and counterclaimed for general and special damages allegedly incurred as a result of third party plaintiff's (original defendant's) breach of contract and breach of warranty. The jury awarded third party defendants one dollar on their counterclaim for breach of an implied warranty of fitness for a particular purpose.

Third party defendants appeal.

*Obenshain, Hinnant, Ellyson, Runkle & Bryant, by Alfred S. Bryant, for original defendant and third party plaintiff.*

*Walker, Palmer & Miller, P.A., by Douglas M. Martin, for third party defendants.*

WHICHARD, Judge.

[1]  Third party defendants first contend that a tally sheet show-ing records of service calls made by third party defendant Southern Agricultural Chemicals for the purpose of replacing defective rollers fell within the business records exception to the hearsay rule, and thus was improperly excluded. We find no er-ror.

Business records are admissible as an exception to the hear-say rule if "(1) the entries are made in the regular course of business; (2) the entries are made contemporaneously with the events recorded; (3) the entries are original entries; and (4) the en-tries are based upon the personal knowledge of the person mak-ing them." *Lowder, Inc. v. Highway Comm.*, 26 N.C. App. 622, 650, 217 S.E. 2d 682, 699, *cert. denied*, 288 N.C. 393, 218 S.E. 2d 467 (1975). The purpose of these prerequisites to admission is to ensure the trustworthiness of the records. "[E]ntries should be so complete and in such detail as to indicate that they are reliable and accurate." *Lowder*, 26 N.C. App. at 651, 217 S.E. 2d at 700. To render the tally sheet admissible, the sources of information from which it was drawn, the method of its compilation, and the cir-cumstances surrounding the entire matter, must have been such as to indicate its trustworthiness. *Id.* at 650, 217 S.E. 2d at 700.

Third party defendants offered the tally sheet into evidence through the testimony of a Southern Agricultural Chemicals employee who was in charge of supervising the service and repair of machines which used the rollers. The witness testified in perti-nent part as follows:

> In my capacity as the person responsible for the service of this equipment, we kept business records concerning the employee time and expenses involved in these service calls. I can identify what has been marked for identification as Southern Agricultural's Exhibit 8. It is a tally sheet for the roller repairs that we did on the various machines. The Ex-hibit is in my handwriting. I kept this record in the ordinary course of business at Southern Agricultural. It was main-tained by me and in my custody.
>
> The entries made on that record were made by me at or about the time when the particular incident would occur. . . .

In order to fill out this report, *I would receive the information from work orders that we maintained that would include all of that information.* [Emphasis supplied.]

The work orders referred to by this witness were not offered into evidence. In *Lowder* this Court held a summary of daily reports inadmissible due largely to incompleteness of the reports themselves, which had been admitted into evidence. Because the reports were incomplete, the Court concluded the summary was not produced in the regular course of business. The failure here to offer the work orders, or at least to offer detailed evidence as to their origin and substance, similarly deprived the Court of the information needed to determine the trustworthiness of the tally sheet. The Court thus properly excluded it on the ground that an adequate foundation establishing its trustworthiness had not been laid.

Accepting as true the witness' conclusory statements that the entries were made in the ordinary course of business, were contemporaneous with the events recorded, and were in the witness' handwriting (*i.e.*, were original entries), there is still insufficient evidence that the entries were made with adequate personal knowledge of the witness. The tally sheet, to be proved reliable, must be shown to be based on reliable information. The work orders themselves thus must be shown to satisfy the conditions of the business records exception or otherwise to provide a sufficient basis for introduction of the tally sheet.

[2] Third party defendants argue the tally sheet was admissible by analogy to ledger sheets, which are ordinarily admitted without requiring admission of documentary evidence from which the ledger entries are made. *See State v. Dunn*, 264 N.C. 391, 141 S.E. 2d 630 (1965); *Builders Supply v. Dixon*, 246 N.C. 136, 97 S.E. 2d 767 (1957); *Supply Co. v. Ice Cream Co.*, 232 N.C. 684, 61 S.E. 2d 895 (1950); *Oil Co. v. Horton*, 23 N.C. App. 551, 209 S.E. 2d 418 (1974). The argument is without merit. The mere fact that a record is by definition a ledger sheet does not make it automatically admissible. The conditions of the business records exception must still be established to the court's satisfaction. *See Dunn, Builders Supply, Supply Co.,* and *Oil Co., supra.* Further, a ledger sheet tends by its nature to have features of reliability. "A 'ledger' is the principal book of accounts of a business establish-

ment in which all the transactions of each day are entered under appropriate heads so as to show at a glance the debits and credits of each account." *Black's Law Dictionary* 802 (rev. 5th ed. 1979). It is generally true that a ledger is regularly checked for accuracy and the ledger keeper thereby becomes trained in habits of precision, thus justifying a conclusion that the ledger is sufficiently trustworthy. *See Lowder*, 26 N.C. App. at 650, 217 S.E. 2d at 700. There is no evidence here, however, regarding the business function of the tally sheet, or its method of compilation, which would suggest the likelihood of accuracy. The argued analogy of the tally sheet to ledger sheets is therefore inapposite, and admission of the tally sheet was not required by the cases regarding admission of ledger sheets.

Third party defendants next contend the court improperly sustained objections to several questions propounded to the service and repair supervisor regarding entries on the tally sheet and his calculations based thereon. Again, because the work orders upon which the witness based his calculations were not in evidence, the sufficiency of his data and the extent of his knowledge were indeterminable. Objections to the questions thus were properly sustained. Further, the record does not disclose what the witness' answers would have been. Thus "there is nothing to show that the [third party defendants] were prejudiced." *Hege v. Sellers*, 241 N.C. 240, 245, 84 S.E. 2d 892, 896 (1954). *See also Service Co. v. Sales Co.*, 259 N.C. 400, 411, 131 S.E. 2d 9, 18 (1963).

[3]   Third party defendants further contend the following portion of the jury instruction on damages was error: "*Several* of the rollers at this time came apart, and some were returned for repair, and *several* of the . . . machines were worked on and replaced with other rollers." (Emphasis supplied.) They argue that use of the word "several" was "clearly incorrect" and probably "conveyed to the jury the false impression that the . . . roller failure was an infrequent and trivial problem."

While third party defendants contend the excluded tally sheet showed repairs to over 400 rollers, the only competent evidence regarding the number of defective rollers was testimony of the service and repairs supervisor that he "personally worked on about fifteen" roller repairs, either doing the work himself or

supervising others. Although this witness later testified that "[t]here were probably eight individuals other than me who performed work on the . . . machine[s]" there was no evidence as to how much of their work involved roller repairs. In light of the fact that the only competent evidence before the court showed fifteen defective rollers, we fail to see error prejudicial to third party defendants in the court's describing this number by use of the word "several."

[4] Third party defendants finally contend the court erred in failing to give requested instructions on incidental and consequential damages. When there is a breach of warranty in the sale of goods, the buyer may recover incidental and consequential damages in a proper case. *See* G.S. 25-2-714(3), -715 (1965). Incidental and consequential damages are "special damages, those which do not necessarily result from the wrong." *Rodd v. Drug Co.*, 30 N.C. App. 564, 568, 228 S.E. 2d 35, 38 (1976). Special damages "must be pleaded, and the facts giving rise to [them] must be alleged so as to fairly inform the defendant of the scope of plaintiff's demand." *Id.* An instruction on special damages is appropriate, however, only when such damages are particularly alleged in the complaint *and the allegation is sustained by the evidence. See Binder v. Acceptance Corp.*, 222 N.C. 512, 514-15, 23 S.E. 2d 894, 895 (1943).

Third party defendants alleged in their counterclaim that they "incurred great costs and expense in service calls to replace broken rollers and have suffered significant damage to their good name and reputation." Although these allegations may be sufficiently particular to give third party plaintiff notice of special damages, the record contains no competent evidence which sustains them. The service and repairs supervisor testified that he personally was involved in the repair of about fifteen rollers, and that eight other persons were employed to service machinery; but the record contains no competent evidence of expenses attributable specifically to defective rollers and not included within expenses incurred in the routine service and repair of machinery. Neither was there evidence of damage to reputation. The failure to instruct on incidental and consequential damages thus was not error.

No error.

Judges CLARK and WEBB concur.